UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GGNSC LOUISVILLE ST. MATTHEWS, LLC
d/b/a GOLDEN LIVINGCENTER – ST. MATTHEWS;
GGNSC ADMINISTRATIVE SERVICES, LLC;
GGNSC HOLDINGS, LLC;
GGNSC EQUITY HOLDINGS, LLC;
GGNSC EQUITY HOLDINGS II, LLC;
GOLDEN GATE NATIONAL SENIOR CARE, LLC;
GOLDEN GATE ANCILLARY, LLC;
GGNSC CLINICAL SERVICES, LLC; and
GPH LOUISVILLE ST. MATTHEWS, LLC                              PLAINTIFFS

v.                                         CIVIL ACTION NO. 3:17-cv-00185-CRS-CHL

ROBERT SAUNDERS, as Administrator of
the Estate of Emma Saunders, Deceased                           DEFENDANT

Memorandum Opinion

I.  Introduction

This matter is before the Court on the motion of Defendant Robert Saunders, as Administrator of the Estate of Emma Saunders, deceased, to dismiss the petition for arbitration under Federal Rules of Civil Procedure 12(b)(1), 12(b)(7), and 12(b)(6), ECF No. 8. Plaintiffs GGNSC Louisville St. Matthews, LLC d/b/a Golden LivingCenter – St. Matthews, GGNSC Administrative Services, LLC, GGNSC Holdings, LLC, GGNSC Equity Holdings, LLC, GGNSC Equity Holdings II, LLC, Golden Gate National Senior Care, LLC, Golden Gate Ancillary, LLC, GGNSC Clinical Services, LLC, and GPH Louisville St. Matthews, LLC (collectively, "Plaintiffs") responded, ECF No. 11. Saunders replied, ECF No. 13.

Plaintiffs also moved to compel Saunders to submit claims that are currently pending in a related case, Case No. 17-CI-001189, from the Jefferson County, Kentucky Circuit Court ("the

1

state court case") into arbitration, ECF No. 2. Saunders responded, ECF No. 9. Plaintiffs replied, ECF No. 10.

Because these motions involve similar facts and related issues, the Court will address them in a single memorandum opinion and order. For the reasons explained below, the Court will deny Saunders' motion to dismiss Plaintiffs' petition to compel arbitration. The Court will grant in part and deny in part Plaintiffs' petition to compel arbitration of the claims that are currently pending in the state court case.

II. Background

Emma Saunders was a resident at the Golden LivingCenter – St. Matthews, Kentucky. *See* Agreement 8, ECF No. 1-3; St. Ct. Compl. ¶ 3, ECF No. 1-2. She lived at the Golden LivingCenter – St. Matthews between May 11, 2014 and May 17, 2016, excluding periods of hospitalization. *Id*. Before she began to reside at the facility, Emma Saunders and the Golden LivingCenter – St. Matthews entered into an agreement entitled the "Alternative Dispute Resolution Agreement" ("the Agreement") on March 12, 2014. Agreement 2, ECF No. 1-3. In relevant part, the Agreement required arbitration of:

> any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admission Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where Facility is located. Covered Disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, healthcare, consumer, or safety standards.

*Id*. at 4. The Agreement also stated that "[a]ll claims based in whole or in part on the same incident, transaction, or related course of care or services provided by the Facility to the Resident shall be addressed in a single ADR process, which shall adjudicate solely the claims of the

2

Parties named in this Agreement, and no others." *Id*. The Agreement noted that it would be governed by and interpreted under the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et. seq*. *Id*. at 6.

Emma Saunders signed the Agreement, thereby acknowledging that she had read the terms, understood the nature of the document, and accepted the Agreement's terms. *Id*. at 8. Although the Agreement stated that it could be revoked by sending written notice to the Golden LivingCenter – St. Matthews within thirty days of its being signed, Agreement 6, ECF No. 1-3, Emma Saunders never acted upon her right to do so.

In March 2017, after Emma Saunders' death, Robert Saunders, as administrator of Emma Saunders' estate, filed the state court case against GGNSC Louisville St. Matthews, LLC d/b/a Golden LivingCenter – St. Matthews, GGNSC Administrative Services, LLC, GGNSC Holdings, LLC, GGNSC Equity Holdings, LLC, GGNSC Equity Holdings II, LLC, Golden Gate National Senior Care, LLC, Golden Gate Ancillary, LLC, GGNSC Clinical Services, LLC, GPH Louisville St. Matthews, LLC, Allyson Skaggs, in her capacity as Administrator of the Golden Living Center – St. Matthews, Lisa Davis, in her capacity as Administrator of the Golden Living Center – St. Matthews, and Joshua Lee Schindler, in his capacity as Administrator of the Golden Living Center – St. Matthews. St. Ct. Compl. ¶¶ 4–20, ECF No. 1-2. Saunders asserts that Plaintiffs breached their duty of care towards Emma Saunders, which led to the deterioration of her health and physical condition beyond that caused by the normal aging process (Count I). *Id*. ¶¶ 30–66. Saunders also asserts a wrongful death claim against Plaintiffs and seeks damages, including those for the grief suffered by statutory beneficiaries of the estate (Count II). *Id*. ¶¶ 67–70. He seeks to recover punitive and compensatory damages, and attorney fees and costs. *Id*. ¶ 73.

Plaintiffs, all of whom are defendants in the state court case, filed a petition with this Court to (1) compel arbitration of the claims asserted by Saunders in the state court case under § 4 of the FAA, citing in support the arbitration clause from the Agreement, and (2) to stay the state court case pending arbitration under the All Writs Act, 28 U.S.C. § 1651. Pet. Compel Arbitration 1, ECF No. 1. Plaintiffs assert in their petition to compel arbitration that this Court has jurisdiction over the petition to compel arbitration under the federal diversity jurisdiction statute, 28 U.S.C. § 1332(a)(1), and the FAA. *Id.* ¶ 14.

III. Saunders' Motion to Dismiss

Saunders now moves to dismiss Plaintiffs' petition to compel arbitration of the state court claims for lack of subject matter jurisdiction under Rule 12(b)(1), for failure to join indispensable parties under Rule 12(b)(7), and/or for failure to state a claim for which relief can be granted under Rule 12(b)(6). Mot. Dismiss 1, ECF No. 8. The Court will deny Saunders' motion to dismiss the petition to compel arbitration based on all three grounds.

    A.    Whether the Court Should Grant Saunders' Motion to Dismiss for Lack of Subject Matter Jurisdiction

Motions to dismiss for lack of subject matter jurisdiction made under Rule 12(b)(1) generally come in two varieties, a facial attack and a factual attack. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack challenges the sufficiency of the pleadings. *Id*. In reviewing a facial attack, the court must accept as true all factual allegations in the complaint. *Id*. In contrast, the court need not accept as true all factual allegations in the complaint when reviewing a factual attack on the pleading. *Id*. When reviewing a factual attack, the court "weigh[s] the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id*. The court has the discretion to review "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*.

Saunders argues that the Court should dismiss Plaintiffs' petition to compel arbitration for lack of subject matter jurisdiction because the "parties are not diverse, nor is there a federal question present." Mem. Supp. Mot. Dismiss 3–7, ECF No. 8-1. Citing *Vaden v. Discover Bank*, 556 U.S. 49 (2009), Saunders explains that "in questions involving arbitration questions, th[e] Court must look to the underlying controversy to determine questions of subject matter jurisdiction." *Id*. at 5. And in this case, the individual parties in the underlying controversy are not diverse because Allyson Skaggs, Lisa Davis, and Joshua Lee Schindler ("the Administrators") are, like Saunders, citizens of Kentucky. *Id*. at 8. Thus, according to Saunders, the jurisdictional requirements of the FAA are not satisfied.

Plaintiffs assert in opposition that *Vaden* is inapplicable to this case because *Vaden* only applies to federal cases in which the jurisdictional basis underlying the arbitration petition involves federal question jurisdiction. Resp. Opp. Mot. Dismiss 5, ECF No. 11. Because the jurisdictional basis in this case is diversity jurisdiction, Plaintiffs contend that the Court need not look to the underlying controversy to determine questions of subject matter jurisdiction. *Id*. And because the parties in this case are completely diverse, the jurisdictional requirements of the FAA are satisfied. *Id*.

Plaintiffs' petition to compel arbitration is brought under § 4 of the FAA. Pet. Compel Arbitration 1, ECF No. 1. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. The FAA does not grant federal district courts subject matter jurisdiction. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Accordingly, there must be an independent basis for federal jurisdiction before a district court may entertain a case involving the FAA. *Id*.

In *Vaden*, the Supreme Court of the United States determined that district court may "look through" a § 4 petition to compel arbitration at the underlying controversy to determine whether it has jurisdiction when the alleged jurisdictional basis is federal question jurisdiction. 556 U.S. at 52–53, 70. The Supreme Court further stated that parties may not ask the "federal court to order arbitration of the portion of a controversy that implicates federal law when the court would not have federal question jurisdiction over the controversy as a whole." *Id*. at 70. Moreover, "[i]t does not suffice to show that a federal question lurks somewhere inside the parties' controversy, or that a defense or counterclaim would arise under federal law." *Id*.

Other district courts in the Sixth Circuit, including in the Western District of Kentucky, have determined that *Vaden* only applies to cases in which the jurisdictional basis is federal question jurisdiction. *See, e.g., GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902-DJH 2016 U.S. Dist. LEXIS 25372, at *5 (W.D. Ky. Feb. 29, 2016); *Sun Healthcare Grp., Inc. v. Dowdy*, No. 5:13-CV-00169-TBR, 2014 U.S. Dist. LEXIS 24285, at *9 (W.D. Ky. Feb. 26, 2014); *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 953 (N.D. Ohio 2009). This Court agrees with these sister courts and also finds that *Vaden* only applies to cases in which the jurisdictional basis is federal question jurisdiction.

The jurisdictional basis in this case is diversity jurisdiction. *See* Pet. Compel Arbitration ¶ 14, ECF No. 1. As such, this Court need not "look through" at the state court case to determine whether there is a jurisdictional basis for Plaintiffs' petition to compel arbitration. Because there

is complete diversity among the parties before the Court, diversity jurisdiction exists. Thus, the Court will deny Saunders' motion to dismiss the petition to compel arbitration of the claims asserted in the state court case under Rule 12(b)(1).

      B.    <u>Whether the Court Should Grant Saunders' Motion to Dismiss for Failure to Join Indispensable Parities</u>

Rule 12(b)(7) provides that a party may move to dismiss a claim for failure to join indispensable parties. Saunders contends that the Court should alternatively grant the motion to dismiss the petition to compel arbitration under Rule 12(b)(7) because Plaintiffs failed to join the Administrators, who are necessary and indispensable parties, to the action. Mem. Supp. Mot. Dismiss 11, ECF No. 8-1. Saunders explains that the Administrators "have an interest relating to the subject matter of the action" and that their "absence in the present matter will impair or impede their ability to protect their interests with regard to the arbitration agreement." *Id*. at 13. Their inclusion in the action would destroy the court's jurisdiction over the case, and the Rule 19(b) factors direct the court to dismiss the case. *Id*. at 13–17. Plaintiffs argue in opposition that the Administrators are not indispensable parties because they will not be prejudiced by any judgment of the Court. Resp. Opp. Mot. Dismiss 8, ECF No. 11. Additionally, the possibility of requiring Plaintiffs to proceed in multiple forums would be prejudicial to them, and a judgment of the Court in the Administrators' absence would be adequate. *Id*. at 8–9.

A person's status as a joint tortfeasor does not make him or her "a necessary party, much less an indispensable party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001). As defined under Rule 19(a)(1)(A), a person is indispensable if "in that person's absence, the court cannot accord complete relief among existing parties." Here, the Court can and will decide the controversy without the administrators being named in the suit. Though the Court's decision may

7

affect Saunders' claim against the Administrators, the Administrators need not be parties for the Court to enforce the Agreement under Rule 19(a)(1)(A).

Rule 19(a) also defines an indispensable party as a person who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest . . . or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). If a person or entity is a necessary party, the court must then decide "if joinder of that person or entity will deprive the court of subject matter jurisdiction." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (citations and internal quotation marks omitted). If the party cannot be joined to the current action, the court then "must analyze the Rule 19(b) factors to determine whether the court should in equity and good conscience dismiss the case because the absentee is indispensable." *Id*.

In this case, the Administrators have the same interest as Plaintiffs: to compel arbitration under the Agreement. Additionally, the existing parties will not incur inconsistent obligations because a ruling compelling arbitration in this Court will bind all the parties in the state court case regarding the enforceability of the arbitration agreement, including the Administrators. Because the Administrators are not indispensable parties in the current action, as defined by Rule 19(a), the Court need not address the Rule 19(b) factors.

Overall, because the Administrators are not indispensable parties under the Rule 19(a) definitions, the Court will deny Saunders' motion to dismiss the petition to compel arbitration under Rule 12(b)(7).

C.  Whether the Court Should Grant Saunders' Motion to Dismiss for Failure to State Claim for Which Relief Can Be Granted

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 570 (2007). A complaint states a plausible claim for relief when the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept as true legal conclusions or "threadbare recitals of the elements of a cause of action." *Id*. When resolving a motion to dismiss, however, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007)). When reviewing a motion to dismiss, a court may consider the complaint and "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citing *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

Saunders asserts that the Court should dismiss Plaintiffs' petition to compel arbitration of the state court case under Rule 12(b)(6) because Emma Saunders lacked capacity to enter into a contract when she signed the Agreement on March 12, 2014. Mem. Supp. Mot. Dismiss 18–30, ECF No. 8-1. Saunders accordingly maintains, "a valid agreement to arbitrate never existed," and Plaintiffs do not state a claim for which relief can be granted. *Id*. at 30. Plaintiffs contend, however, that they adequately pleaded in the petition to compel arbitration that Emma Saunders

had the capacity to enter into a contract when she signed the Agreement and that Saunders cannot demonstrate with clear and convincing evidence that Emma Saunders lacked the capacity to execute the Agreement. Resp. Opp. Mot. Dismiss 11–14, ECF No. 11. Saunders and Plaintiffs provide expert reports supporting their arguments regarding whether Emma Saunders had the required capacity to enter into a contract when she signed the Agreement, which included the arbitration clause. *See* Ex. 3, ECF No. 8-3; Ex. A, ECF No. 10-1.

As an initial matter, the Court will not consider the parties' expert reports in deciding whether to dismiss the petition to compel arbitration under Rule 12(b)(6) because they are not referenced in the complaint nor are central to the claims contained therein. *See Kreipke*, 807 F.3d at 774. The Court will, however, consider these exhibits in deciding whether there is a valid agreement to arbitrate below.

Turning to the merits of the parties' arguments, in Kentucky, "[t]o create a valid, enforceable contract, there must be a voluntary, complete assent by the parties having capacity to contract." *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 321 (Ky. 2015) (quoting *Conners v. Eble*, 269 S.W.2d 716, 717–18 (Ky. 1954)). "The test of legal capacity to contract is the ability to understand and appreciate the consequences of the particular transaction." *Conners*, 269 S.W.2d at 718. The petition to arbitrate asserts that Emma Saunders was advised of her right to seek legal counsel regarding the Agreement, that signing the Agreement was not a condition of her residency at the Golden LivingCenter – St. Matthews, and that she could revoke the Agreement by sending written notice to the Golden LivingCenter – St. Matthews within thirty days of signing it. Pet. Compel Arbitration 6, ECF No. 1. The petition for arbitration also states that Emma "Saunders' execution of the Agreement was knowing and voluntary and that she represented that she had an opportunity to read the agreement." *Id*. Taken together, these factual

allegations sufficiently assert that Emma Saunders had the capacity to enter into a contract when she signed the Agreement. As such, the Court declines to grant Saunders' motion to dismiss under Rule 12(b)(6) based on the argument that there was not a valid agreement to arbitrate as a result of Emma Saunders' alleged lack of capacity.

In sum, the Court declines to dismiss the petition to compel arbitration of the claims pending in the state court case for lack of subject matter jurisdiction under Rule 12(b)(1), for failure to join indispensable parties under Rule 12(b)(7), and/or for failure to state a claim for which relief can be granted under Rule 12(b)(6). The Court accordingly turns to Plaintiffs' petition to compel arbitration of the state court case and to enjoin the state court proceedings.

IV.  Plaintiffs' Petition to Compel Arbitration of the State Court Case

Plaintiffs have moved to compel arbitration of the state court case and to enjoin Saunders from further pursuing his claims in the Jefferson County Circuit Court. Pet. Compel Arbitration 1, ECF No. 1. Under § 2 of the FAA, an arbitration clause "in a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was "designed to promote arbitration" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). The FAA has been described as "embod[ying] [a] national policy favoring arbitration" and a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Id*. at 346 (internal citations omitted). The Supreme Court of the United States has written that "state law may be applied 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)).

When deciding whether to stay proceedings and compel arbitration under the FAA, the Court must (1) "determine whether the parties agreed to arbitrate," (2) "determine the scope of the agreement," (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitratable," and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). The parties' arbitrability dispute centers on the first and second factors, whether they agreed to arbitrate and the scope of the Agreement. Regarding the first factor, the parties do not appear to contest that Emma Saunders signed the Agreement upon her admission to the Golden LivingCenter – St. Matthews on March 12, 2014. Pet. Compel Arbitration 8, ECF No. 1; Reply 1–4, ECF No. 10. Instead, the parties dispute whether Emma Saunders had the requisite capacity to enter into a contract when she signed the Agreement.[1] *Id*.; Resp. Opp. Pet. Compel Arbitration 17, ECF No. 9. Concerning the second factor, the parties disagree on whether the Agreement binds Saunders as a beneficiary to arbitrate his wrongful death claim. Resp. Opp. Pet. Compel Arbitration 15–16, ECF No. 9; Reply 11–15, ECF No. 10. The Court will address these arguments and then will briefly address the other factors that a Court must consider in determining whether to stay proceedings and compel arbitration under the FAA.

    A.    <u>Whether Emma Saunders Had Capacity to Enter into a Contract When She Signed the Agreement on March 12, 2014</u>

As previously noted, Kentucky law provides that "[t]o create a valid, enforceable contract, there must be a voluntary, complete assent by the parties having capacity to contract."

---

[1] The parties' arguments regarding whether Emma Saunders had the required capacity to enter into a contract when she signed the Agreement on March 12, 2014 are almost identical to those raised in Saunders' motion to dismiss under Rule 12(b)(6) and Plaintiffs' response in opposition to the motion to dismiss.

*Extendicare Homes,* 478 S.W.3d at 321 (quoting *Conners,* 269 S.W.2d at 717–18). A person is presumed to have capacity to enter into a contract, "and the burden of showing mental incapacity is upon the person asserting it." *Rath's Committee v. Smith*, 202 S.W. 501, 503 (Ky. 1918). And "an executed contract will not be lightly set aside in the absence of clear and convincing evidence." *Lausman v. Brown*, 168 S.W.2d 579, 585 (Ky. 1943).

"The test of legal capacity to contract is the ability to understand and appreciate the consequences of the particular transaction." *Conners*, 269 S.W.2d at 718. But "neither age, sickness, extreme distress, or debility of the body will affect the capacity to make a contract or conveyance, if sufficient intelligence remains to understand the transaction. *Hall v. Crouch*, 341 S.W.2d 591, 594 (Ky. 1960). Accordingly, "unsoundness of mind to avoid a contract must relate to the immediate time when the contract was made." *Id.*; *see also Revlett v. Revlett*, 118 S.W.2d 150, 154 (1938) ("The fact that the grantor is physically unable to look after his property, or that his mind is enfeebled by age or disease, is not sufficient to render the deed voidable, if he still retains a full comprehension of the meaning, design and effect of his acts at the time of the execution of the deed.").

Here, Saunders contends that Emma Saunders lacked the capacity to enter into a contract when she signed the Agreement on March 12, 2014 and thus the Agreement, including the arbitration clause, is not enforceable. Resp. Opp. Pet. Compel Arbitration 17, ECF No. 9. Saunders explains that Emma Saunders' medical records demonstrate that she was suffering from dementia, confusion, and memory loss at the moment when she signed the Agreement and that these health conditions prevented her from understanding "a complex, single-spaced, four-page document written in small text that purported to waive her fundamental right to trial by jury." *Id*. at 14–15. In support of this lack-of-capacity argument, Saunders provides an eight-

page chart summarizing parts of Emma Saunders' medical record with "relevant notations" that mention symptoms of dementia, confusion, and memory loss. *Id*. at 6–14.

Saunders also provides a supporting affidavit from an expert witness, Dr. Daniel Lively, a physician licensed to practice in California who affirms that he has treated patients suffering from cognitive impairment, confusion, dementia, and memory loss. Ex. 3 at 1, ECF No. 9-3. In his affidavit, Dr. Lively states that he reviewed Emma Saunders' medical records. *Id*. at 1–2. He opines that Emma Saunders had been suffering from dementia, confusion, and memory loss beginning on at least March 29, 2013 and that "[t]ypically, cognitive impairment and dementia of the type suffered by Ms. Saunders does not improve, and in fact deteriorates." *Id*. at 3. Dr. Lively concludes that upon her admission to the Golden Living Center – St. Matthews on March 11, 2014, Emma Saunders "would have suffered impaired judgment and decision-making abilities as a result of her dementia, confusion, and memory loss," as well as "hearing loss and impaired vision." *Id*. Thus, according to Dr. Lively, Emma Saunders "could not have understood the nature and consequences of the document entitled Arbitration Agreement attached as Exhibit B and could not have had capacity to execute the document." *Id*. at 4. Moreover, Emma Saunders "would not have been capable of reading and understanding the document on March 12, 2014. *Id*.

Plaintiffs argue that Saunders has failed to provide clear and convincing evidence that Emma Saunders was incapable of entering into a contract on March 12, 2014, the day when she signed the Agreement. Reply 5–11, ECF No. 10. They explain that the summary of Emma Saunders' medical records provided by Saunders is irrelevant to the determination of whether she had capacity to sign the Agreement because the events in the chart do not relate to the time when she signed the Agreement. *Id*. at 7. Plaintiffs assert that the summary additionally

14

mischaracterizes Emma Saunders' medical records. *Id*. at 8. Plaintiffs further maintain that Dr. Lively's "speculative, conclusory opinion . . . is not persuasive, nor is it sufficient to rebut the presumption of capacity under Kentucky law." *Id*. They contend that "Dr. Lively is not an expert on issues of mental capacity, never personally observed Ms. Saunders, and his opinions are not supported by Ms. Saunders' medical records." *Id*.

Plaintiffs further maintain that Emma Saunders had the capacity to enter into a contract when she signed the Agreement. *Id*. at 9. In support of this assertion, they provide an affidavit from Dr. Timothy S. Allen, a psychiatrist who has served as a court-appointed evaluator of competency to stand trial for the Kentucky Correctional Psychiatric Center and Associate Clinical Professor in the University of Kentucky's Department of Psychiatry. Ex. 1 at 2, ECF No. 10-1. Dr. Allen maintains that he reviewed the Golden LivingCenter – St. Matthews' admission, business, and medical records, Emma Saunders' medical records that Dr. Lively previously reviewed, Dr. Lively's affidavit, and the Agreement. *Id*. at 1–2. Dr. Allen notes that on March 12, 2014, the day that Emma Saunders signed the Agreement, multiple staff members of the Golden LivingCenter – St. Matthews noted that she was alert and oriented, and that she could walk, talk, communicate, feed herself after food was placed on a tray, participate in therapy, and make her own decisions. *Id*. at 5. He affirms that he is unable to find objective evidence in the available records that Emma Saunders lacked the capacity "at, or around the time of, admission to understand the consequences of entering into the [Agreement]." *Id*. Moreover, although Emma Saunders

> was suffering from some physical limitations and had a diagnosis of Dementia without complication, the assessments conducted on her by a number of medical professionals and persons able to personally observe her do not reveal that she was suffering from cognitive impairment which would have impaired her ability to make the decision to waive her rights to a jury trial should a dispute arise about her care.

15

*Id*.

After considering the evidence submitted by the parties regarding the enforceability to the Agreement, the Court has determined that the medical summary provided by Saunders in his response to Plaintiffs' motion to compel arbitration is unhelpful in determining whether Emma Saunders was capable of understanding and appreciating the consequences of signing the Agreement on March 12, 2014. The medical chart provides the following three lines of symptoms and conditions that Emma Saunders experienced on that day:

| March 12, 2014 | Louisville Lung Care | SOAP Note | Dementia, unable to obtain review of symptoms due to dementia |
| March 12, 2014 | Golden Living – St. Matthews | Physician Visit Note | Dementia, deteriorating condition |
| March 12, 2014 | Golden Living – St. Matthews | Nurse's Note | Mild confusion at times, hard of hearing |

Resp. Opp. Pet. Compel Arbitration 11, ECF No. 9. These three lines do not inform the Court whether these symptoms and conditions would have affected her ability to enter into a contract, and the Court is unwilling to make that inference.

The expert report prepared by Dr. Lively is similarly unhelpful. Dr. Lively's opinion that Emma Saunders "could not have understood the nature and consequences of the document entitled Arbitration Agreement and could not have had capacity to execute the document" relies on generalities and assumptions about cognitive impairment and dementia. *See* Ex. 3 at 3, ECF No. 9-3. Dr. Lively does not opine that Emma Saunders' medical records reveal that her health-related conditions affected her ability to understand and appreciate the consequences of entering into the Agreement on March 12, 2014, the day she signed the Agreement. Ultimately, Dr.

Lively can only provide a theory as to Emma Saunders' cognitive state at the time she entered into the Agreement.

Saunders has not provided clear and convincing evidence that Emma Saunders lacked the capacity to enter into a contract when she signed it. Therefore, he has not overcome the strong presumption in Kentucky law that Emma Saunders had the required capacity, *see Rath's Committee*, 202 S.W. at 503, and the Court declines to find otherwise. Given that both Emma Saunders and a representative of Plaintiffs signed the Agreement, the Agreement is a valid arbitration agreement. *See* Agreement 8, ECF No. 1-3.

B. <u>Whether the Scope of the Agreement Includes Saunders' Wrongful Death Claim</u>

Saunders also argues that he is not bound by the Agreement to arbitrate the wrongful death claim because an arbitration agreement does not bind wrongful death beneficiaries in Kentucky. Resp. Opp. Pet. Compel Arbitration 15–16, ECF No. 9. Plaintiffs, however, assert that Saunders is bound by the Agreement to arbitrate his wrongful death claim because any Kentucky law holding that an arbitration agreement does not bind wrongful death beneficiaries is inconsistent with federal law and thus is preempted by the FAA. Reply 11–15, ECF No. 10.

In Kentucky, a wrongful death claim may be brought by the "personal representative of the deceased" for beneficiaries of the claim. Ky. Rev. Stat. Ann. § 411.130; *Pete v. Anderson*, 413 S.W.3d 291, 300 (Ky. 2013). In *Ping v. Beverly Enterprises*, Kentucky Supreme Court determined that a wrongful death claim is independent from a personal injury claim. 376 S.W.3d 581, 599 (Ky. 2012). The Court explained that a wrongful death claim "accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss." *Id*. Thus, the appellate court held, under Kentucky law, "a decedent cannot bind his or her beneficiaries to arbitrate their wrongful death claim." *Id*. The Kentucky Supreme Court has

17

reaffirmed this holding on wrongful death claims in at least two additional cases. *Pete*, 413 S.W.3d at 300 ("We concluded [in *Ping*] that while a survival action is derivative of a personal injury claim which belongs to the estate, a wrongful death action is an independent claim belonging to the intended beneficiaries under KRS 411.130 . . . Based on the plain language of KRS 411.130 and our holding in *Ping*, we must reject Pete's contention that the wrongful death action belongs to the estate."); *Extendicare Homes*, 478 S.W.3d at 314 ("Our analysis in *Ping* was thorough, complete, correct, and unanimous. We reaffirmed it in *Pete* and we have no reason to retreat from it now.").

The United States Court of Appeals for the Sixth Circuit examined whether the FAA preempts the holding in *Ping*. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 201 (6th Cir. 2016). The federal appellate court explained that *Ping* does not categorically prohibit arbitration of wrongful death claims: "it only concludes that wrongful-death beneficiaries are not bound by agreements that are executed by the decedent." *Id.* at 198. Additionally, the federal appellate court determined that *Ping* does not disfavor arbitration agreements; it is "indifferent" to arbitration agreements. *Id.* at 199. Thus, the Sixth Circuit concluded that the FAA does not preempt the holding in *Ping*. *Id.*

The parties do not dispute that Saunders is the representative of Emma Saunders' estate and also the kindred of the deceased. *See* Opp. Pet. Compel Arbitration 15–16, ECF No. 9; Reply 11–15, ECF No. 10. Given *Ping* and the Sixth Circuit's holding in *Nichols* that the FAA does not preempt the determination in *Ping* that a wrongful death claim in Kentucky is not required to be submitted to arbitration, Saunders is not bound by the Agreement to arbitrate his wrongful death claim despite the existence and enforceability of the Agreement.

C.  Whether Any Asserted Federal Claims Are Nonarbitrable and Whether Some Claims Should Be Stayed Pending Arbitration

Given that the Agreement is enforceable and that the scope of the Agreement excludes Saunders' wrongful death claim, the Court now turns to the remaining two factors that should be considered when district courts in the Sixth Circuit are deciding whether to stay proceedings and compel arbitration under the FAA: (3) whether federal statutory claims are asserted and whether Congress intended those federal claims to be nonarbitrable, and (4) whether some claims should be stayed pending arbitration. *See Stout*, 228 F.3d at 714. The petition to compel arbitration does not assert any federal statutory claims; thus, the third factor is irrelevant to the current action.

In considering the fourth factor, the Court particularly notes that Saunders' negligence claim is subject to arbitration under the Agreement while the wrongful death claim is not. As such, the Court will stay the wrongful death claim pending in the state court case in the interests of judicial economy and consistency. Saunders will be enjoined from proceeding against the plaintiffs in the state court case on the wrongful death claim until the conclusion of the arbitration of the negligence claim.

In sum, the Court will grant in part and deny in part Plaintiffs' motion to enjoin the state court proceedings pending against them and to enforce the arbitration agreement at issue.

IV.  Conclusion

The Court will deny Saunders' motion to dismiss Plaintiffs' petition to compel arbitration of the state court case. The Court will grant in part and deny in part Plaintiffs' petition to compel the claims pending in the state court case into arbitration. The Court will grant Plaintiffs' petition to compel Saunders' negligence claim in the state court case (Count I) into arbitration. The Court will accordingly compel the parties to arbitrate the negligence claim.

The Court will deny Plaintiffs' petition to compel Saunders' wrongful death claim in the state court case (Count II) into arbitration. The Court will stay Saunders' wrongful death claim pending the arbitration of the negligence claim. Saunders will be enjoined from proceeding against the plaintiffs in the state court case on the wrongful death claim until the conclusion of the ordered arbitration. An order will be entered in accordance with this memorandum opinion.

May 18, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**